1     IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2

3 UNITED STATES OF AMERICA   :
              :
4   v.        :   Criminal No. 1:18-cr-21
              :
5 MARK BRETZ       :

6

7

8   Transcript of proceedings on October 7, 2019, United
   States District Court, Erie, Pennsylvania, before
9   District Judge David S. Cercone.

10

11

12

13 APPEARANCES:

14   For the Government:  U.S. Attorney's Office
              Christian A. Trabold, Esquire
15            U.S. Courthouse
              17 South Park Row, Room A320
16            Erie, PA 16501

17   For the Defendant:  Federal Public Defender
              Andrew Lipson, Esquire
18            1001 Liberty Avenue
              Suite 1500
19            Pittsburgh, PA 15222

20   Court Reporter:   Janis L. Ferguson, RPR, CRR
              17 South Park Row
21            Room A340
              Erie, PA 16501

22

23

24

   Proceedings recorded by mechanical stenography;
25 transcript produced by computer-aided transcription.

```
1                    P R O C E E D I N G S
2                         2:05 p.m.
3          (In open court, Defendant present with counsel.)
4          THE COURT:  The court is convened in the case of
5  United States versus Mark Bretz, at Criminal No. 18-21 of the
6  Court's criminal docket in the United States District Court,
7  Western District of Pennsylvania, Erie Division.  This is the
8  time set for sentencing.
9              Mr. Lipson, have you and your client had an
10 opportunity to review the presentence investigation report and
11 the addendum attached to it?
12         MR. LIPSON:  We have, Your Honor.
13         THE COURT:  Other than matters that you've put in
14 your sentencing memorandum, do you have any additions,
15 corrections, or modifications to the presentence investigation
16 report?
17         MR. LIPSON:  No, Your Honor, not at this time.
18         THE COURT:  Does the Government?
19         MR. TRABOLD:  No, sir.
20         THE COURT:  All right, then.
21             Then the findings and the proposed guideline
22 calculations in the presentence investigation report and the
23 addendum are now adopted as the Court's final findings in
24 guideline calculations.
25             Before we proceed further, I do need to see counsel
```

1    at the Defendant at side-bar.

2                (Side-bar conference held.)

3                (Side-bar conference concluded.)

4         THE COURT:  Before sentence is imposed, the Court

5    invites counsel to make argument and invites the Defendant to

6    exercise his right of allocution.

7                Mr. Lipson, we'll begin with you, please.

8         MR. LIPSON:  Thank you, Your Honor.

9                Your Honor, I would like to note for the Court

10   that members of Mr. Bretz's family are here to show their

11   support for Mr. Bretz.  In particular, Mr. Bretz's sister,

12   Carla Bretz; his parents, Mark and Kristy Bretz are here; as

13   well as his uncle, Gary Straneva, all here to show support for

14   my client.

15               Your Honor, this is a difficult case.  The

16   guidelines are 121 months to 151 months, and that's based

17   largely on the receipt of child pornography guideline at

18   2G2.2.

19               Your Honor, Mr. Bretz comes before the Court

20   asking that a sentence of 90 months would represent a sentence

21   that is sufficient, but not greater than necessary in this

22   case for several reasons.

23               But, Your Honor, this is the first serious

24   offense in my client's life.  He has never served a

25   substantial period of incarceration in his life prior to this

1    case.  And he has been in custody for 15 and a half months

2    already at Erie County Prison awaiting sentencing in this

3    case.

4              Your Honor, the Government's sentencing memo

5    details the circumstances of the criminal conduct that my

6    client engaged in, but I think it is important to note that on

7    the day that investigators executed a search warrant at his

8    home here in Erie, Pennsylvania, he candidly spoke with those

9    agents, he waived his Miranda rights against

10   self-incrimination, and explained not only the nature of what

11   he did that was in violation of federal law, but, also, the

12   extent of it.

13             And consistent with that admission and that

14   remorse that he expressed to the investigating agents in this

15   case, he has pleaded guilty to all four counts charged by the

16   Government and is accepting of the Court's judgment in this

17   case.

18             Your Honor, a sentence, though, of 90 months,

19   which represents a two-and-a-half-year variance from the low

20   end of the guidelines, is appropriate in this case for the

21   following reasons:

22             First, the probation office correctly

23   calculated his offense scores -- or, sorry, his criminal

24   history score at a total of seven points, which places him

25   into Criminal History Category 4.  Their calculation is

1   technically correct, Your Honor, but I believe, given the

2   circumstances of those crimes that he committed as a younger

3   man and the sentence that he received, demonstrate that his

4   score of seven and his placement in Criminal History Category

5   4 substantially overrepresents the seriousness of his criminal

6   history.

7            Your Honor, the seven points that he gets for

8   his criminal history come down to three separate convictions,

9   which are reflected at Paragraphs 67, 68, and 69 of the final

10  presentence report.

11           The first two offenses at Paragraph 67 and 68

12  assign a total of five points for two separate petty theft

13  shoplifting convictions that he sustained; the first one at

14  age 18, and the second one, Your Honor, at age 20.

15           At age 18, he was caught shoplifting a small

16  digital MP3 player from Sears.  And for that case, he received

17  a total of, Your Honor, a -- he received a probationary

18  sentence from the Court of Common Pleas here in Erie, Your

19  Honor, but because he was caught smoking marijuana on a couple

20  occasions and because of his shoplifting offense at what

21  became this conviction at Paragraph 68, his term of probation

22  was revoked, and he was given an incarceratory sentence of

23  approximately -- give me one moment, Your Honor -- of four to

24  12 months incarceration.

25           Because of that, the probation office correctly

1    counts that as a two-point conviction.  But given the fact

2    that that is a petty shoplifting offense for which he

3    originally got probation, and that his drug use and marijuana,

4    Your Honor, nothing alleged more serious than that -- although

5    that was a violation of the terms of his probation -- and his

6    conviction at Paragraph 68, it got converted, Your Honor, from

7    a one-point conviction to a two-point conviction, Your Honor.

8                And so I would ask the Court to -- given the

9    circumstances of that offense, to vary downward one criminal

10   history point for that conviction.

11               For the conviction at Paragraph 68, Your Honor,

12   this was another very similar shoplifting offense.  There, he

13   was charged and convicted of shoplifting an accessory to a

14   video game console, Your Honor.  That -- and the Court gave a

15   very uncommon sentence there; a sentence of one to 20 months

16   incarceration.  He served a total of 30 days incarceration on

17   that offense, but because the maximum penalty was 20 months

18   for that conviction, the probation office correctly notes that

19   the guidelines treat that as a three-point conviction.

20               Your Honor, I think given the circumstances of

21   that case and the sentence that he received and what he

22   ultimately served there, that instead of three points, the

23   Court should vary down and find that that is really a -- in

24   some sum and substance, Your Honor, a conviction that smacks

25   of a one-point penalty under what the guidelines truly

1   want to -- typically contemplate.

2                      And, lastly, Your Honor, the third conviction

3   that contributes to the seven points is a two-point conviction

4   for disorderly conduct for failure to comply with a police

5   officer.  That occurred when my client was 23 years old in

6   2014.

7                      Apparently, Mr. Bretz was having an argument

8   with his girlfriend at the time.  Police were dispatched, I

9   believe because a neighbor called, and the police officers

10  found Mr. Bretz's girlfriend at the time locked out of the

11  home.

12                     Mr. Bretz had some choice words for the police

13  officers, and instead of treating it like a domestic argument,

14  they charged Mr. Bretz with a disorderly conduct.  He received

15  a two- to four-month sentence, ultimately serving three months

16  there, Your Honor.  And that is a two-point conviction as

17  well.

18                     I think given the nature of those three

19  convictions, receiving a total of seven points and being in

20  Category 4 -- when I think of a Category 4 client of mine,

21  Your Honor, their criminal history just looks substantially

22  different than that Mr. Bretz has.  And given the way points

23  have been assigned in this case, I asked the Court to vary

24  down four criminal history points to three, essentially saying

25  one point would be sufficient for each of those convictions at

1     Paragraphs 68 to 69.  And that would place Mr. Bertz in

2     Criminal History Category 2 instead of Category 4.

3                The effect that that would have on the

4     guideline calculation -- and I understand that I'm asking this

5     in terms of a variance under Section 3553(a) and not a formal

6     departure.  But the effect would be to change his advisory

7     guideline range from 121 to 151 months, Your Honor, to 97 to

8     121 months.

9                And I believe that given that the offense score

10    is as high as it is because of the way Section 2G2.2 treats

11    child pornography offenses, that what criminal history

12    category an individual finds them in has the effect of

13    drastically increasing their advisory guideline range.

14               Here, that effect, Your Honor, is two years on

15    the low end and two and a half years on the high end.  And I

16    believe that a variance, in light of the nature of my client's

17    criminal history, is warranted here for that reason.

18               Now, Your Honor, the second reason that I

19    believe a 90-month term of incarceration is sufficient, but

20    not greater than necessary is -- which I just touched on, is

21    the way that the sentencing guidelines treat child pornography

22    offenses; essentially, responding to Congress to ratchet up

23    offense scores based on conduct that is nearly ubiquitous in

24    all of these cases.

25               In particular, the variance that I'm asking the

1   Court to adopt today is just one of those several enhancements
2   under Section 2G2.2, Subsection (B).  That is the use of the
3   computer, Your Honor.
4              As I stated in my sentencing memo, Your Honor,
5   use of computer is -- I didn't include the statistic in the
6   sentencing memo, Your Honor.  But as the Court is very well
7   aware, these cases are essentially computer offenses.  Perhaps
8   when child pornography was -- in possession and other actions
9   with respect to child pornography was criminalized by
10  Congress, that was back in the '90s, Your Honor, and the
11  Internet had not pervaded our culture or society to the extent
12  it has now.  And what we see is, with respect to child
13  pornography, these are Internet crimes.
14             And so when a computer is used in over
15  95 percent in all of these cases, an enhancement based on the
16  use of computer fails to, I guess, distinguish between those
17  defendants which are more or less culpable.  And I think
18  Courts within this district have routinely found that the use
19  of computer enhancement, those two points really do not bear
20  on a defendant's culpability in a given child pornography
21  case.
22             For that reason, Your Honor, Mr. Bretz has
23  asked the Court to vary down in the two points on his offense
24  score.  Your Honor, such a variance, when coupled with the
25  request for the Court to recognize the overrepresentation

1   of his criminal history in this case, would bring him from

2   a -- what I had said last, with my last argument, that a 97-

3   to 121-month advisory guideline range would bring Mr. Bretz to

4   78 to 97 months.

5               Your Honor, what I am proposing as a sentence

6   of 90 months would represent a sentence that is in the upper

7   end -- the upper half of that revised advisory guideline

8   range.  And I think that that -- the Court, in light of

9   Mr. Bretz's, I would say, non-serious, non-substantial, and

10  overly calculated criminal history and the use of computer,

11  that the Court has a valid basis to make that variance.

12              Lastly, Your Honor, the PSR makes clear that my

13  client is a troubled young man; that from a early young age he

14  has been diagnosed as suffering from very serious mental

15  health issues.  In particular, he has been diagnosed with

16  bipolar disorder, substance abuse dependence, and he has a

17  family history of depression.

18              As a result of this, Your Honor, throughout his

19  teenage years and early 20's, my client has been prescribed a

20  myriad of powerful psychotropic medications, including

21  Depakote, which is spelled D-E-P-A-K-O-T-E; Seroquel,

22  S-E-R-O-Q-U-E-L; Wellbutrin, W-E-L-L-B-U-T-R-I-N; Zoloft; and

23  Risperdal, R-I-S-P-E-R-D-A-L, not to mention Ritalin and

24  Adderall for, you know, attention deficit disorders and

25  hyperactivity that he suffered from in high school as well.

1          I know that the Government, in its sentencing

2    memo, has made the argument that, well, he never got -- he

3    never followed through on any of the treatments that he was

4    ordered or was prescribed to take, and, therefore, to rely on

5    that as a basis for a variance is inappropriate, Your Honor,

6    and I disagree.  I think that misconceives the nature of the

7    mental health diagnoses that my client suffers from.

8          It is not something like an uncontrolled --

9    like a controllable addiction, like perhaps cannabis use or

10   other ones that are -- that are not of an opiate nature, where

11   you can say, all right, I'm going to rationally decide I'm

12   going to go to the treatment, and then I'm going to get better

13   and move on from this time in my life.

14         The mental health diagnoses that he has

15   received from the doctors that have evaluated him are very

16   serious and go to the heart of one's ability to regularly

17   attend that mental health treatment.

18         Well, the circumstances of this case are

19   unfortunate, and his incarceration and the sentence that the

20   Court will impose today will generally be a punishment to

21   Mr. -- to Mr. Bretz, Your Honor.  But there is a silver

22   lining, if one could find it in circumstances like this, where

23   he will be in the Federal Bureau of Prisons system.

24   Thereafter, he will be on supervision for a period of time, an

25   extended period of time, where there are far more resources,

1  care, and attention paid to criminal defendants like

2  Mr. Bretz, who suffer from these kinds of disorders, that will

3  allow him to get the treatment and have a member of this

4  probation office be on him to make sure that he attends those

5  treatments.  And if he doesn't, he will be before Your Honor,

6  and the Court will be able to have that level of supervision

7  on him that otherwise prior to this, based on his non-serious

8  criminal history, he simply just never had.

9           Your Honor, he understands that he needs to

10 take treatment very seriously as he goes forward in life or he

11 will forever be held back and haunted by these -- these mental

12 health issues that he suffers from.  But I believe that the --

13 being now in the federal system will give him the best

14 opportunity for that.

15          And I think Your Honor, to the extent my

16 client's activities and behavior in this case were in any way

17 related to those mental health issues, the Court can take just

18 some modicum of comfort that those issues will be addressed in

19 his supervision and in the Bureau of Prisons, and that there

20 should be less concern, as in other cases where mental health

21 issues are less prevalent, that recidivism will be of less

22 concern in this case.

23          Your Honor, I know that the Government, with

24 respect to one of my early arguments, says that the criminal

25 history score doesn't account for my client's juvenile record.

1   But the guidelines recognize that juvenile records should not

2   count if they are not close enough in time and certainly of

3   not a serious nature.  And, once again, much similar to the

4   three convictions my client sustained as an adult, they are

5   for criminal mischief, trespass; things that -- you know, that

6   reflect deviance and delinquency, but just that, Your Honor.

7            And so I don't think that that in any way

8   undercuts the argument that seven points substantially --

9   substantially overcounts the nature of his criminal history.

10            Your Honor, my client has never been in this

11   kind of trouble before.  There are no allegations that he has

12   ever caused any physical harm to an individual in his presence

13   in his life.  There is no allegation that he has ever forced

14   himself on anyone, minor or adult, or committed any sort of

15   violent crime against someone.

16            And I think that that is what -- that -- those

17   concerns exist beneath the surface anytime this Court is faced

18   with a child pornography offense, but, also, a case like this,

19   where there is online extortive behavior.

20            And the Court is aware of a concept that at

21   least I know that I have submitted to this Court before as

22   this concept of the online disinhibition effect; that people

23   will behave online and on social media in ways that they would

24   not treat a person face to face; that it in some ways

25   emboldens them, but also gets them to be separated from the

1    victims of their offense.

2              Mr. Bretz understands fully the effect that his

3    actions have had on the individuals that he spoke to directly

4    on Facebook, and he also understands that child pornography is

5    the scourge of our society.  And that even though he did not

6    partake in the direct abuse of those minors, that merely by

7    possessing and receiving that -- those images, he has

8    perpetuated that harm.  He does understand that, Your Honor.

9              But I think given the nature of his criminal

10   history and given the nature of the way the guidelines treat

11   certain offense characteristics as leading to enhancements, I

12   believe that the Court has a reasonable basis to vary down and

13   find that a more -- a more sufficient, but not greater than

14   necessary advisory guideline range here is 78 to 97 months and

15   find that a sentence in the upper end of that range, 90

16   months, is sufficient, but not greater than necessary.

17             That, combined with an extended period of

18   supervised release -- at least ten years, Your Honor -- can

19   assure the Court that Mr. Bretz would be sufficiently

20   deterred, but, also, that the community will be protected from

21   any potential future harm that he can inflict.

22             I think that a 90-month sentence would

23   specifically deter him from ever engaging in this again.  But

24   with the supervision of the United States Probation Office and

25   the treatment that they would require Mr. Bretz to undergo

1    while on supervision, hopefully that would address directly

2    the issues that caused the offense in this case.

3                   Thank you, Your Honor.

4            THE COURT:  Does Mr. Bretz wish to address the

5    Court?

6            MR. LIPSON:  May I have one moment to confer with my

7    client?

8            (Discussion held off the record.)

9            MR. BRETZ:  Your Honor.

10           THE COURT:  Yes.

11           MR. BRETZ:  I'd like to say that I am truly sorry

12   about everything that I did.  And to the people that I harmed,

13   I'd like to say sorry.  Especially to my family, especially to

14   the victims.  And I'd like to say sorry to the Court because

15   of taking up your time.  Honestly, I kind of look forward to

16   getting the help that I need, because I know I need it.

17                  That's all.

18           THE COURT:  Mr. Trabold.

19           MR. TRABOLD:  Your Honor, I would submit to you that

20   when you look at the 3553 factors in this case, none of them

21   are in this Defendant's favor.

22                  The nature and circumstances of this offense

23   clearly are not in his favor.  This is a Defendant that's

24   spent a considerable amount of time collecting child

25   pornography.

1              I don't need to go over with Your Honor how
2     terrible that is, but, really, we call it child pornography,
3     but, really, they are crime scene photos.  They are pictures
4     of little kids being raped.  There's no -- there's no other
5     way you can really describe them.
6              This Defendant, when interviewed by the FBI,
7     revealed that he masturbated to material that the average
8     human being completely recoils when they get even the
9     slightest look at it.
10             Additionally, Your Honor, and one of the things
11    that's very troubling to me about this case, when we looked at
12    the content of his computer, he had videos on the computer
13    clearly taken from his house of a little girl walking home
14    from school past the front of his house.  It's highly
15    concerning to me that he took those videos -- not only that he
16    took them, but that he kept them.  He took it upon himself to
17    videotape a girl walking home from school more than once.
18    It's extremely troubling.
19             What's most troubling about the circumstances
20    of this offense, though, are that on at least three separate
21    occasions and by the Defendant's own estimate five separate
22    occasions -- and, actually, he said, when asked how many times
23    he had engaged in sextortion online, he actually said a
24    "shit-ton".
25             This Defendant -- and there's no other way --

1    there's no other way around it.  This Defendant terrorized

2    multiple women into providing him what he wanted.

3                And what's odd about it, and what is troubling

4    to me, is he recorded significant portions of that terror that

5    he engaged in.  And you -- when we looked at the computer, you

6    can see exactly what it is that he did to these -- on what --

7    one of them was a minor at the time.  And it's our belief,

8    although we could never really identify who the other two

9    girls were, that those girls were young adults, who weren't

10   minors at the time, but were not -- you know, not much older

11   than 18.

12               But you can -- you can see him interact with

13   these women online, because he records the entire interaction.

14   And you can see their -- their reaction as he begins to

15   ratchet up his behavior and increase his threatening language

16   and his threatening behavior.  You can start to see them break

17   down emotionally and begin -- at the end, prior to them giving

18   him what he wants, they -- they end up begging him not to do

19   what it is he's doing.  In response to that begging, in

20   response to the -- essentially, the request for mercy, he

21   ratchets up his language and makes it even more threatening.

22               He recorded these interactions.  And I would

23   submit to you that the only reason he recorded the

24   interactions is because he wanted to enjoy them over and over

25   and over again.  Unfortunately for him, recording them

1   basically resulted in him recording criminal activity over and
2   over and over again.

3            The first interaction that's reported by the
4   authorities in Colorado is extremely concerning, because he
5   actually extorts this girl while she's in high school, in the
6   school, and he tells her to go to the bathroom in the school
7   and provide him what he wants, and she actually does it while
8   she's there.

9            So to call the situation "unfortunate", to call
10  it "difficult", it is really a dramatic oversimplification.
11  It's way more than unfortunate, and it's way more than
12  difficult.  This is a Defendant that showed no mercy to the
13  victims as he terrorized them over and over and over again.

14           And he comes into court today and asks for a
15  downward variance because his criminal history isn't that bad,
16  he claims.  Well, that ignores the fact that he got no points
17  for his juvenile adjudications, it ignores the fact that he
18  began his activity when he was 15, it ignores the fact that on
19  his first adult conviction, he was given the opportunity for
20  ARD, where he would have had no points for that conviction.
21  He would have been given ARD.  Had he done what he was
22  supposed to, that interaction with law enforcement would have
23  resulted in no points.

24           But even having been given ARD, he still
25  couldn't take advantage of that situation.  He was revoked

1    from ARD, and then he was revoked again and got a jail

2    sentence after he initially got probation.  Still didn't learn

3    anything from that interaction and committed multiple other

4    offenses.

5              Now, did he murder people as a result of those?

6    No.  But the fact of the matter is he has seven criminal

7    history points, he was revoked multiple times, and he got no

8    points for any of his juvenile adjudications.  That is not an

9    overstatement of your criminal history.  And there's nothing

10   about any of that criminal history that should give you any

11   confidence at all that when you release him, he's going to do

12   what either you or the probation department tell him to do.

13             Your Honor, when you look at the history and

14   characteristics of this Defendant, this Defendant, unlike many

15   of the defendants that come into court before you for

16   sentencing, describes his upbringing as pretty normal.  He had

17   two loving parents who did the best they could to take care of

18   him, who provided him a home, provided him the necessities of

19   life.  That is way beyond what many people come into court

20   having experienced in their young life.  He, unfortunately,

21   didn't take advantage of those opportunities.

22             And he wants to point to his mental health

23   history as somehow mitigating.  I would submit to you that it

24   is not mitigating, because one of the things that you have to

25   do here is make an assessment as to your level of confidence

1    as to what this Defendant will be like when you release him

2    back into the community.

3              His mental health history should not provide

4    you a level of confidence in releasing him out into the

5    community, for the primary reason that having been given the

6    opportunity for treatment on multiple occasions, he did not

7    take advantage of that.  And you can't just say, well, that's

8    because he was mentally ill.  You have to look at a person's

9    conduct.  And you don't just get a pass for criminal conduct

10   because you're mentally ill.  You don't just get a downward

11   variance because you say you have mental health history.  You

12   have to look at, well, has this person in the past done

13   anything to address their mental health history.  And he has

14   not done anything, even though he's been given multiple

15   opportunities.

16             So having done nothing to address your mental

17   health history, you should lose the opportunity for that to be

18   a mitigator in this case.

19             He's been given the opportunity for drug

20   treatment multiple times.  He's not followed through with any

21   of that.  So that should not be a basis to mitigate his

22   sentence.

23             Your Honor, one of the things that's unusual

24   about this case is we have not had a lot of these sextortion

25   cases.  We're almost kind of on the leading edge -- and I

1    hope -- I hope, of course, that we don't have any more of

2    these.  But this is now becoming more and more of a problem

3    online; individuals extorting -- almost all the time it's men,

4    of course, extorting women to provide them naked imagery.

5              But we are kind off the leading edge of those

6    cases, such that you're imposition of a top-end guideline

7    sentence in this case will have a massive deterrent effect.

8    It will send the message to the community that these things

9    are not to be tolerated; that this is above and beyond -- way

10   above and beyond what we will accept.

11             Your Honor, at the end of the calculus in this

12   case, this is a Defendant that, by his own admission, engaged

13   in sextortion activity with -- I think he actually put a

14   number on it of at least five.  We found recordings of at

15   least three victims.  He repeatedly tells these victims, using

16   increasingly threatening language, to do what he wants.

17             He also admitted to the FBI that when they came

18   into his house, he tried to hide his laptop.  They ended up

19   finding his laptop in the location where he tried to hide it.

20             I don't doubt that this Defendant is a troubled

21   young man.  In fact, when I looked at the content of his

22   computer, I came to the conclusion that he is an extremely

23   troubled young man.

24             But the question that the defense has not

25   answered in this case is:  Why is that a mitigator?  To call

1   yourself a troubled young man, that's not mitigating.  If

2   anything, that's aggravating, because part of what you have to

3   do again is make the assessment as to what this Defendant is

4   going to be like when you release him.

5            Your Honor, one of your -- as you're well

6   aware, having been a Judge for a very long time now -- one of

7   your primary responsibilities is to protect the community.

8   This is a Defendant who by his own admission is a troubled

9   young man, who hasn't followed through on the opportunities

10  that have been given to him for treatment, who has been

11  revoked from probation, who hasn't followed through or taken

12  advantage of ARD.  I agree that he's a troubled young man.  We

13  are simply asking you to protect the community for as long as

14  possible and to give him a sentence at the top end of the

15  guideline and to place him on a term of supervised release for

16  the rest of his life.

17            Thank you.

18       THE COURT:  Will the Defendant please rise.

19            Pursuant to the Sentencing Reform Act of 1984,

20  it's the judgment of the Court that the Defendant, Mark Bretz,

21  is hereby committed to the custody of the United States Bureau

22  of Prisons for a term of 96 months at count one and 24 months

23  at counts two, three, and four, to run concurrently.

24            The Defendant does not have the ability to pay

25  a fine.  Therefore, a fine is not imposed.

1          The issue of restitution will be resolved by

2    separate order.

3          Upon release from imprisonment, the Defendant

4    shall be placed on a term of supervised release for a term of

5    six years at count one and one year at each of counts two,

6    through four, with all terms to run concurrently.

7          Within 72 hours of release from the custody of

8    the Bureau of Prisons, the Defendant shall report to the

9    probation office in the district to which he is released.

10   While on supervision, the Defendant shall not commit another

11   federal, state, or local crime, and he shall comply with

12   standard conditions of supervision that have been recommended

13   by the Sentencing Commission and adopted by this Court.

14         He shall also comply with these additional

15   conditions:  The Defendant shall not possess a firearm,

16   ammunition, destructive device, or any dangerous weapon.

17         The Defendant shall not use or possess

18   controlled substances, except those that are prescribed by a

19   licensed medical practitioner for legitimate medical purposes.

20         The Defendant shall participate in a program of

21   testing and, if necessary, treatment for substance abuse, as

22   directed by the probation officer, until he's released from

23   the program by the probation officer.

24         The Defendant shall submit to one drug

25   urinalysis within the first 15 days of being placed on

1   supervision and at least two after.

2              The Defendant shall contribute to the costs of

3   drug rehabilitation in an amount to be determined by his

4   probation officer, provided that it's reasonable and does not

5   exceed the actual cost of the treatment.

6              The Defendant shall not purchase, possess, or

7   use any substances that are designed to alter or simulate or

8   change in any way your urine specimens, or devices designed to

9   submit a urine specimen from another individual.

10             The Defendant shall participate in a program of

11  mental health treatment and/or sex offender treatment.  Again,

12  a program approved and directed by his probation officer.

13             The Defendant shall abide by all program rules,

14  requirements, and the conditions of the sex offender treatment

15  program, including submitting to polygraph testing to

16  determine if he's in compliance with the conditions of his

17  supervised release.

18             The probation office is authorized to release

19  the Defendant's presentence investigation report to any mental

20  health treatment providers, if so requested.

21             With the exception of brief, unanticipated, and

22  incidental contact, the Defendant shall not associate with

23  children under the age of 18, except for family members or

24  children in the presence of an adult who has been approved by

25  the Defendant's probation officer.

1          The Defendant shall not possess or access with

2     intent to view any materials, including pictures, photographs,

3     books, writings, drawings, videos, or video games depicting

4     and/or describing child pornography, as that term is defined

5     in Title 18 of the United States Code, Section 2256(a).

6          In accordance with Title 18 of the United

7     States Code, Sections 3563(a)(8), 3583(d) and 4042(c)(4) and

8     the Sex Offender Registration and Notification Act at Title 42

9     of the United States Code, Section 16901, the Defendant shall

10    report the address at which he will reside and any subsequent

11    change of address to his probation officer.

12         Further, the Defendant shall register as a

13    convicted sex offender in any state in which he resides, is

14    employed, carries on a vocation, or is a student.

15         The Defendant is permitted to possess and/or

16    use a computer and is allowed access to the Internet.

17    However, the Defendant is not permitted to use a computer or

18    other electronic devices, including a cell phone, to access

19    child pornography or to communicate with any individual or

20    group for the purpose of promoting sexual relations with

21    children.

22         The Defendant shall consent to the installation

23    of any hardware or software to monitor any computer or other

24    electronic communication or data storage devices used by the

25    Defendant to confirm the Defendant's compliance with this

condition.  The Defendant shall consent to the periodic
inspection of any such installed hardware or software to
ensure that it is functioning properly.  The Defendant shall
pay the monitoring costs, as directed by his probation
officer.

Furthermore, the Defendant shall consent to
periodic, unannounced examinations by his probation officer of
any of his computers, cell phones, or other electronic
communication or data storage devices to which he has access,
to confirm that he is in compliance with this condition.

Additionally, the Defendant shall consent to
the seizure and the removal of hardware and data storage media
for further analysis by the probation office based upon
reasonable suspicion of a violation of the conditions of
supervision or unlawful conduct by the Defendant.

The Defendant's failure to submit to the
monitoring and/or the search of his computers and other
electronic communication or data storage devices that he uses
may be grounds to revoke his supervised release.

The Defendant shall provide the United States
Probation Office with accurate information about his entire
computer system, including all hardware and software, as well
as other electronic communication or data storage devices or
media.  This shall include disclosure of all passwords that
the Defendant uses and the identity, passwords, and any

1   requested information about any Internet service provider that

2   he uses.

3             The Defendant shall comply with all rules of

4   the Computer Restriction and Monitoring Program.

5             The Defendant may use a computer in connection

6   with any employment approved by the Defendant's probation

7   officer and provided that the Defendant notifies the employer

8   of the nature of his convictions.  The probation officer shall

9   confirm Defendant's compliance with this notification

10  requirement.

11            The Defendant shall not enter into any rental

12  agreement and/or purchase agreements for computers, cell

13  phones, or electronic communication or data storage devices

14  without the prior consent of his probation officer.

15            The Defendant, likewise, shall not make

16  excessive or unexplained purchases of items ordinarily related

17  to children under the age of 18 -- and that would be toys,

18  clothing for children, things of that nature -- unless he gets

19  prior approval of his probation officer.

20            The Defendant shall not photograph or videotape

21  any children under the age of 18 without the written consent

22  of their parent or legal guardian, who at the time of consent

23  are aware of the nature of the Defendant's prior criminal

24  history.  That is, that have been made aware of it.  And the

25  Defendant's convictions.  And approval of his probation

1  officer.

2          The Defendant shall submit his person,

3  property, residence, vehicles, papers, place of business,

4  and/or employment to a warrantless search conducted by the

5  United States Probation Office, provided that the probation

6  office has reasonable suspicion that there's contraband or

7  evidence supporting a violation of any of these conditions of

8  his supervised release.  And, also, such a search, based upon

9  reasonable suspicion, must take place at a reasonable time and

10  in a reasonable manner.

11          The Defendant shall advise any other residents

12  that the premises may be searched by the probation office

13  pursuant to this condition.  Failure by the Defendant to

14  submit to such a search may be grounds to revoke his

15  supervised release.

16          Finally, the Defendant shall cooperate with his

17  probation officer in the collection of a DNA sample, which is

18  required by law.

19          The Defendant is ordered to pay a special

20  assessment of $400, which is due immediately, if it's not

21  already been paid.  That's not a fine.  That's a special

22  assessment.  No fine is invoked; the Court making the finding

23  that the Defendant lacks the ability to pay a fine.

24          The Defendant's property that's the subject of

25  the Court's Preliminary Order dated September 13th, 2019 is

1  hereby forfeited to the United States.

2          MR. LIPSON:  Your Honor, with respect to that last

3  point, I had a discussion with counsel for the Government

4  about certain items that were listed in its motion for

5  criminal forfeiture, and we identified seven items which are

6  actually not subject to forfeiture, because after agents

7  reviewed, they did not contain any proceeds or were not used

8  in relation to the offenses.

9          THE COURT:  Okay.

10          MR. LIPSON:  I could state what those are for the

11  record, or I could speak to the Court's clerk after --

12          MR. TRABOLD:  I will put on the record that I have

13  spoken with counsel, and it is our plan to -- hopefully by the

14  beginning part of next week, just because the case agent is

15  out of town this week, to return the items that counsel has

16  identified to us.

17          All that happened was counsel identified the

18  items that he didn't think had contraband on them.  We'll just

19  confirm that with our forensic examiner, and then those items

20  will be returned to Mr. Bretz's family, hopefully by the

21  beginning part of next week.

22          However the Court wants to handle that,

23  whatever needs to be put on the record beyond that, I'm fine

24  with, but I just wanted you to know that.

25          THE COURT:  Are you satisfied with that?

1          MR. LIPSON:  That works for Mr. Bretz, yes.

2          THE COURT:  All right.

3               The Court notes that the Court concurs, and

4    will -- understands that the Forfeiture Order as it currently

5    stands will have those exceptions.

6          MR. LIPSON:  Thank you, Your Honor.

7          THE COURT:  It will be worked out between the

8    parties.

9          MR. LIPSON:  Thank you, Your Honor.

10         THE COURT:  In imposing the sentence, the Court has

11   considered all relevant statutory provisions, the submissions,

12   written submissions from counsel, the arguments of counsel,

13   the allocution of the Defendant, the United States Sentencing

14   Guidelines.  The sentence does represent a variance from the

15   guidelines.

16              I would note with regard to that variance that

17   the Court does deem the guidelines in child pornography cases

18   to be generally overly punitive.  This is represented in

19   probably all of the sentences, if not a high percentage of the

20   sentences that this Court has imposed in child pornography

21   cases.

22              And I would recognize also that that's also

23   been the trend across the country and within our district;

24   that there's routinely a variance below the guidelines

25   prescribed in child pornography cases on the basis that they

1    appear to be overly harsh in and of themselves.

2                    Having said that, the Court believes that the

3    sentence imposed in this case for a total of 96 months is a

4    substantial sentence.  It is not a life sentence.  It is one

5    that is sufficient, but not greater than necessary to address

6    the 3553 factors.  It's sufficient, certainly, 96 months, to

7    punish the Defendant for his wrongful conduct.  It's

8    sufficient to promote respect for the law.  It's sufficient to

9    deter others from engaging in similar conduct.

10                   Eight years in federal penitentiary isn't going

11   to deter a rational person from engaging in similar conduct?

12   I think it does.  I think it's sufficient to reflect the

13   seriousness of this crime, which it certainly is a very

14   serious crime.  I think that the incarceration period, coupled

15   with the six years of supervised release to follow, is a

16   substantial period that will protect society from potential

17   harm, as well as the period needed to rehabilitate the

18   Defendant.

19                   The facts of this case are disturbing.  There's

20   no question about it.  What the victims went through because

21   of the Defendant's threats to them, the circumstances

22   surrounding the whole picture, their age, the site of where

23   these threats were made, all into account, paints a very

24   serious and disturbing picture.

25                   But, again, eight years in a federal

1  penitentiary is a substantial sentence, and I believe that one

2  longer than that, coupled with his supervised release, would

3  be more than is necessary to address the sentencing factors

4  set forth in the statute and factors that have been recognized

5  from time and memorial to punish someone for their criminal

6  activity.

7          Mr. Bretz, you have the right to appeal and you

8  have the right to a lawyer to represent you on appeal.  If you

9  cannot afford to hire a lawyer to represent you on appeal, one

10 will be appointed to represent you at no cost to you.

11         Also, if you're indigent, any other costs

12 associated with the appeal, which would include filing fees,

13 the cost of obtaining certified records and transcripts, that,

14 too, would be paid for by the United States Government.

15         You only have 14 days from the date of your

16 sentence to file your appeal.  Should you wait longer than 14

17 days from the date of your sentence, you lose your right to

18 appeal.

19         If you were to contact our court clerk and

20 advise the clerk that you wish to appeal, the clerk would

21 prepare a Notice of Appeal for you and file it on your behalf.

22         Sir, do you understand your appellate rights?

23         MR. BRETZ:  Yes, I do.

24         THE COURT:  Is there anything else from the

25 Defendant by way of the institution where he serves his

1    sentence?

2              MR. LIPSON:  One moment, Your Honor.

3              (Discussion held off the record.)

4              THE COURT:  The Court would note that the Court

5    doesn't have jurisdiction, once sentence is imposed.  However,

6    the Court may make recommendations to the Bureau of Prisons

7    regarding matters such as where he serves his sentence, the

8    programs that he may able to partake in, but they are only

9    recommendations.

10             MR. LIPSON:  Your Honor, Mr. Bretz would request

11   that the Court could recommend to the Bureau of Prisons that

12   he serve his sentence at a facility as close to the Erie,

13   Pennsylvania area as possible so his family could visit him

14   and he can hopefully see them more regularly.

15             THE COURT:  I'll make that recommendation.

16             MR. LIPSON:  Thank you, Your Honor.

17             THE COURT:  Is there anything else from the

18   Defendant?

19             MR. LIPSON:  Not at this time, Your Honor.  Thank

20   you.

21             THE COURT:  Anything else from the Government?

22             MR. TRABOLD:  No, sir.

23             THE COURT:  If not, we're adjourned.  Thank you.

24             (Hearing concluded at 3:27 p.m.)

25

1                    C E R T I F I C A T E

2        I, JANIS L. FERGUSON, RPR, CRR, certify that the
    foregoing is a correct transcript from the record of
3   proceedings in the above-entitled case.

4

5   \S\  Janis L. Ferguson          10/28/2019
    JANIS L. FERGUSON, RPR, CRR     Date of Certification
6   Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25